OPINION OF THE COURT
Edward H. Lehner, J.
The issues presented on defendants’ motions for summary judgment are (i) whether a person who allegedly was exposed to microwave radiation between 1965 and 1967 may be deemed to have been exposed to a "substance” so as to be entitled to the benefits of the date of discovery limitation provisions of CPLR 214-c, and (ii) whether the person’s claim is barred by subdivision (4) of that section because this action was commenced more than one year after discovery of the cause of the illness.
Plaintiff Thomas J. Ford alleges that he developed a cancerous condition as a result of his exposure to microwave radiation during the period 1965-1967 when he was stationed aboard two United States Navy ships where he worked in close proximity to the onboard radar equipment. Plaintiff alleges that defendants were negligent in the designing, testing, analyzing, manufacturing, constructing, fabricating, and installing of the radar systems, components, parts, and accessories. At his deposition, Ford testified that he first noticed symptoms (lingering infections) in the mid-1970’s, but that it was not until July 1988 that he was diagnosed as suffering from non-Hodgkin’s lymphoma, and not until August 1988 that he first suspected that his illness had been caused by his shipboard exposure to nonionizing radiation. This action was commenced in October 1990.
Dismissal is sought on the ground that it is time barred (CPLR 214). Plaintiffs counter that their time to commence this action was extended by the 1986 adoption (ch 682) of CPLR 214-c.
CPLR 214 (5) provides that an action to recover for a personal injury must be commenced within three years of the accrual of the cause of action except as provided in CPLR 214-b, 214-c and 215. Plaintiffs concede that CPLR 214-b and 215 do not apply to this action.
Subdivisions (2), (4) and (6) of CPLR 214-c provide as follows:
"2. Notwithstanding the provisions of section 214, the three *896 year period within which an action to recover damages for personal injury or injury to property caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body or upon or within property must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier * * *
"4. Notwithstanding the provisions of subdivisions two and three of this section, where the discovery of the cause of the injury is alleged to have occurred less than five years after discovery of the injury or when with reasonable diligence such injury should have been discovered, whichever is earlier, an action may be commenced or a claim filed within one year of such discovery of the cause of the injury; provided, however, if any such action is commenced or claim filed after the period in which it would otherwise have been authorized pursuant to subdivision two or three of this section the plaintiff or claimant shall be required to allege and prove that technical, scientific or medical knowledge and information sufficient to ascertain the cause of his injury had not been discovered, identified or determined prior to the expiration of the period within which the action or claim would have been authorized and that he has otherwise satisfied the requirements of subdivisions two and three of this section * * *
"6. This section shall be applicable to acts, omissions or failures occurring prior to, on or after July first, nineteen hundred eighty-six, except that this section shall not be applicable to any act, omission or failure:
"(a) which occurred prior to July first, nineteen hundred eighty-six, and
"(b) which caused or contributed to an injury that either was discovered or through the exercise or reasonable diligence should have been discovered prior to such date, and
"(c) an action for which was or would have been barred because the applicable period of limitation had expired prior to such date.”
Defendants argue that plaintiffs may not avail themselves of the benefits of this section because the radiation to which Ford was exposed, which allegedly caused his cancerous condition, is not a "substance” within the purview of CPLR 214-c. They further contend that (i) plaintiff discovered, or should *897 have discovered, his injury more than three years prior to commencement of the action, so that the suit is barred under subdivision (2), and (ii) that he discovered the cause of his injury more than a year prior to October 1990, with the consequence that the action is barred by subdivision (4).
The statute, by its terms, applies to an action to recover damages for personal injury "caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body”. (Emphasis added.) Its intent was to change the accrual date of such claims from the date of exposure (e.g., Matter of Steinhardt v Johns-Manville Corp., 54 NY2d 1008 [1981]) to the date of discovery. Citing only the dictionary as authority, defendants argue that a "substance” must be composed of matter, and therefore non-ionizing radiation, being a form of energy rather than matter, is not a "substance”. Such a restrictive definition is not supported by a reading of the statute or by the legislative intent behind it.
Initially it is noted that the term "exposure” is defined in subdivision (1) of CPLR 214-c to mean "direct or indirect exposure by absorption, contact, ingestion, inhalation or injection”. It would be difficult to provide a broader definition.
In determining that the human immunodeficiency virus (HIV) is included within the definition of the term "substance”, the Court in Prego v City of New York (147 AD2d 165, 170 [2d Dept 1989]) said:
"While it may be true, as the appellants argue, that the plight of industrial workers exposed to toxic substances, or of patients to whom cancer-causing drugs were administered, triggered the enactment of section 214-c, the lawmakers consciously declined to restrict that provision to these categories of persons suffering latent injuries, employing instead the most comprehensive language imaginable, and declining even to offer definitions of what they meant by 'substances’. In consequence, it would appear that any judicial attempt to restrict the definition to exclude a person who otherwise satisfies the requirements of the provision — i.e., a person whose exposure to a harmful substance has resulted in a latent injury * * * would do violence to the plain language of the statute, and would create artificial exceptions where it was intended that there be none * * *
"The statute at issue in the instant case refers to 'any substance * * * in any form’. '[T]he word "any” means "all” or "every” and imports no limitation’ ”.
*898 As the Court in Prego makes clear, CPLR 214-c, being remedial in nature, is to "be liberally construed 'to suppress the evil and advance the remedy’ intended by the Legislature” (supra, at 171). Just as the Court there held that the drawing of an "arbitrary and artificial distinction between 'biological’ as opposed to 'chemical’ 'substances’ ” lacked support "in either the statute or the legislative purpose”, and would be a "manifest injustice” (supra, at 173), so too, in the case at bar, does defendants’ attempt to limit the statute to material substances, as opposed to those that are incorporeal, fly in the face of the legislative intent to expand the rights of persons injured by the latent effects of exposure to any substance. The Legislature obviously recognized that the substances could not be enumerated or described with specificity. That an expansive definition of "substance” is mandated by the statute is made clear by the term "in any form” qualifying the word "substance”. As the Court in Prego concluded (supra, at 174): "Having waited so long for the Legislature to correct the unfairness of the old 'date-of-exposure’ rule, we are not prepared to begin a retreat from the recently enacted remedial provisions of section 214-c by carving out artificial exceptions where the Legislature saw fit to create none.” (See also, Di Marco v Hudson Val. Blood Servs., 147 AD2d 156 [1st Dept 1989].)
Therefore, the court finds that the radiation to which Ford asserts he was exposed, and which allegedly caused his cancerous condition, constitutes a "substance” within the purview of CPLR 214-c.
Having made the foregoing determination, there remains the issue of whether the action is nevertheless untimely under subdivision (4) of CPLR 214-c because it was instituted more than a year after plaintiff learned of the cause of his injury. A literal reading of that subdivision would result in a bar as the language thereof provides that where the discovery of the cause of the injury occurs less than five years after discovery of the injury or when such discovery should have occurred, then an "action may be commenced * * * within one year of such discovery of the cause of the injury”. Although the subdivision does not limit the one-year limitation period to instances where the three-year period after discovery would be extended, the court finds that the logical and intended interpretation is that the one-year provision is only applicable where the cause is discovered more than two years after the plaintiff learns of the existence of the injury, with the conse *899 quence that the provisions of subdivision (4) can only lengthen the period in which to sue. Any other interpretation could, and in the case at bar would, shorten the three-year period, and thus enable a plaintiff who is less diligent in uncovering the cause of his illness in having a longer period of limitations. The law generally does not reward the less vigilant. This interpretation is in accord with the result reached by the Third Department in Moore v Smith Corona Corp. (175 AD2d 458 [1991]), and employs the following rules of statutory construction stated in Abood v Hospital Ambulance Serv. (30 NY2d 295, 298 [1972]): "While it is true that, whenever the language of a statute is clear and unambiguous, we are required under ordinary rules of construction to give effect to its plain meaning * * * the literal language of the statute, where it does not express the statute’s manifest intent and purpose, need not be adhered to * * * Rather, '[t]o effect the intention of the legislature the words of a single provision may be enlarged or restrained in their meaning and operation, and language general in expression may be subjected to exceptions through implication’.” (Citations omitted.) In a footnote to the above quotation, the Court observed (supra, at 298, n 3): " ‘There is no more likely way to misapprehend the meaning of language — be it in a constitution, a statute, a will or a contract — ’, Judge Learned Hand reminded us, 'than to read the words literally, forgetting the object which the document as a whole is meant to secure.’ (Central Hanover Bank & Trust Co. v. Commissioner of Internal Revenue, 159 F. 2d 167, 169)”.
Finally, whether plaintiff knew or should have known of his "injury” prior to 1988 and whether the symptoms he displayed in the mid-1970’s were indications of the existence of lymphoma must await the trial of the action. Accordingly, defendants’ motion is denied.