[696 NYS2d 587]

Patrick M. Pompa et al., Respondents, v Burroughs Wellcome Company, Appellant, et al., Defendants.

Third Department, October 21, 1999

## APPEARANCES OF COUNSEL

*Nixon & Peabody, L. L. P.,* Rochester (*Andrew M. Burns* of counsel), for appellant.

*Brown, Pinnisi & Michaels, P. C.,* Ithaca (*Michael D. Pinnisi* and *John R. Mayer* of counsel), for respondents.

## OPINION OF THE COURT

SPAIN, J.

Beginning in the summer of 1987 and ending in January 1991, plaintiff Patrick M. Pompa (hereinafter plaintiff), was prescribed and consumed the drug acyclovir marketed under the trade name of Zovirax. In 1988 to 1989, plaintiff began experiencing certain symptoms, including anxiety, confusion, uncontrollable fits of rage and paranoia, as well as hallucina-

tions. In March 1989 he suffered a severe psychotic experience resulting in an involuntary commitment to a psychiatric center, where he was diagnosed with a psychiatric disorder. Upon his release, plaintiff's symptoms continued and he was arrested several times for acts of violence or threatened violence, and he was rehospitalized in other psychiatric centers. Plaintiff stopped taking Zovirax in January 1991. Plaintiff alleges that in August 1993 he first became aware of the possible link between Zovirax and his psychiatric problems after reading an article in a nonmedical magazine which reported that the drug's potential side effects included paranoia, hallucinations, confusion, insomnia, fearfulness and depression.

In June 1994 plaintiff and his wife, derivatively, commenced this action against, *inter alia*, the manufacturer of Zovirax, defendant Burroughs Wellcome Company (hereinafter defendant), alleging causes of action for negligence, failure to warn, strict products liability, breach of warranty and fraud, and seeking punitive damages.[1] Upon defendant's motion, Supreme Court dismissed plaintiffs' fraud and warranty claims and that portion of their punitive damages claim which asserted an independent cause of action. With respect to plaintiffs' negligence and products liability claims, Supreme Court denied defendant's motion, finding that material questions of fact exist as to whether these tort claims were timely interposed under CPLR 214-c (4). Defendant appeals from the denial of its summary judgment motion related to the tort claims.[2]

■ We affirm, determining that Supreme Court correctly concluded that material, triable questions of fact exist regarding whether plaintiffs' tort claims were timely commenced under CPLR 214-c (4). As an initial matter, we agree with Supreme Court's conclusion that under the prevailing liberal construction of pleadings (*see*, CPLR 3026), plaintiffs sufficiently pleaded—and notified defendant of—their reliance upon CPLR 214-c (4). Although it would certainly have been preferable for plaintiff to have expressly cited CPLR 214-c (4) and to have more closely paraphrased the requirement pertain-

---

**1.** Plaintiffs also alleged medical malpractice, negligent misrepresentation and failure to warn claims against four of his treating physicians, and a negligent supervision claim against two of the physicians and their professional corporation.

**2.** Having failed to raise the issue in its appellate brief, defendant has waived any issue pertaining to Supreme Court's failure to dismiss plaintiffs' punitive damages claim in its entirety (*see, Transamerica Commercial Fin. Corp. v Matthews of Scotia*, 178 AD2d 691, 692, n 1; *First Natl. Bank v Mountain Food Enters.*, 159 AD2d 900, 901).

ing to the unavailability of technical, scientific or medical knowledge or information in the scientific and medical communities, rather than plaintiffs' or plaintiff's physicians' subjective understanding or knowledge of the cause of plaintiff's condition, plaintiffs' amended complaint sufficiently alleged the unavailability of this information during the relevant time (*see,* CPLR 214-c [4]; *see also, Matter of New York County DES Litig.*, 89 NY2d 506, 512-513, 515; *Hedlund v County of Tompkins*, 235 AD2d 980, 982-983, *lv dismissed* 89 NY2d 1086, *lv denied* 90 NY2d 808; *cf., Krogmann v Glens Falls City School Dist.*, 231 AD2d 76, 78, *lv dismissed* 91 NY2d 848).

We now turn to defendant's central contention that plaintiffs' action is time-barred. Plaintiffs concede that this action for personal injury allegedly caused by latent effects of exposure to Zovirax—commenced in June 1994—was not commenced within three years of the discovery of plaintiff's injury—which plaintiffs allege occurred in January 1989—and thus was not timely under either CPLR 214 or 214-c (2). Plaintiffs maintain, however, that the exception in CPLR 214-c (4) is applicable to their tort claims as their discovery of the cause of plaintiff's injury/symptoms was delayed until July or August 1993 due to the unavailability—prior to that time—of technical, scientific or medical knowledge necessary to demonstrate a potential causal link between plaintiff's ingestion of this drug and his symptoms.

CPLR 214-c (4) provides a qualified exception to the general three-year limitations period (*see,* CPLR 214 [5]; 214-c [2]) in situations in which a plaintiff was aware of the injury itself but there was a justifiable delay in the discovery of its cause. Specifically, CPLR 214-c (4) affords plaintiffs an additional year after the discovery of the *cause* of the injury to commence an action, provided: (a) plaintiffs demonstrate that they discovered the injury's *cause* within five years of discovering the injury, or when plaintiffs should have discovered the injury, (b) where, as here, the action was not timely commenced under CPLR 214-c (2)—i.e., it was not commenced within three years of the discovery of the injury—plaintiffs must allege and prove that "technical, scientific or medical knowledge and information sufficient to ascertain the cause of his injury had not been discovered, identified or determined" within the three-year period after the injury's discovery, and (c) that CPLR 214-c (2) and (3) have otherwise been satisfied. As relevant to this appeal, the practical effect of this exception is to grant a plaintiff—whose claim is time-barred under subdivision (2) or

(3)—an additional year following discovery of the injury's *cause* to commence an action, but only where plaintiff is able to prove that he or she discovered the injury's *cause* in the next two years (i.e., within five years of the injury's discovery) and that scientific information was not available to ascertain the injury's *cause* within the three years after the injury's discovery (*see, Annunziato v City of New York*, 224 AD2d 31, 38-39).

In moving for summary judgment dismissing plaintiffs' tort claims, defendant contended that plaintiffs did not satisfy any of the requirements of CPLR 214-c (4). Plaintiffs having conceded that this action was not commenced within the general three-year limitations period (*see*, CPLR 214 [5]; 214-c [2]), the burden is on them to aver evidentiary facts showing that the exception embodied in the statute applies (*see*, CPLR 214-c [4]; *see also, Sweet v Austin*, 226 AD2d 942, 943, *lv denied* 88 NY2d 811; *Annunziato v City of New York, supra*, at 31, 38-39).

The threshold requirement of CPLR 214-c (4) is that plaintiffs must have discovered the *cause* of plaintiff's injury within five years of discovering the injury. The parties dispute when plaintiff discovered or should have discovered his *injury*. Under CPLR 214-c, discovery of an *injury* occurs "when the injured party discovers the primary condition on which the claim is based" (*Matter of New York County DES Litig.*, 89 NY2d 506, 509, 514, n 4, *supra; accord, MRI Broadway Rental v United States Min. Prods. Co.*, 92 NY2d 421, 429; *Whitney v Quaker Chem. Corp.*, 90 NY2d 845, 847; *Scheidel v A.C. & S., Inc.*, 258 AD2d 751, 753, *lv denied* 93 NY2d 809), which may include being actually diagnosed as suffering from a particular disease (*see, Sweeney v General Print.*, 210 AD2d 865, 866, *lv denied* 85 NY2d 808; *see also, Hedlund v County of Tompkins*, 235 AD2d 980, 983, *supra; Krogmann v Glens Falls City School Dist.*, 231 AD2d 76, 78-79, *supra*). Notably, an injury refers to "an actual illness, physical condition or other similarly discoverable objective manifestation of the damage [or symptoms] caused by previous exposure to an injurious substance" (*Sweeney v General Print., supra*, at 865-866; *see, Matter of New York County DES Litig., supra*, at 514; *Scheidel v A.C. & S., Inc., supra*, at 753; *Whitney v Agway, Inc.*, 238 AD2d 782, 784; *Krogmann v Glens Falls City School Dist., supra*, at 76, 78), and not to the discovery of the nonorganic, nonbiological cause of the symptoms or the particular toxic substance to which plaintiff was exposed (*see, Scheidel v A.C. & S., Inc., supra*, at 753; *see also, Matter of New York County DES Litig.*,

*supra*, at 514; *Oeffler v Miles, Inc.*, 241 AD2d 822, 825; *Hedlund v County of Tompkins, supra*, at 982; *Krogmann v Glens Falls City School Dist., supra*; *Sweeney v General Print., supra*, at 865-866).

Defendant points to plaintiff's testimony in which he indicated that his first adverse symptoms appeared in the "winter of 1988," when he went to Florida, which included feeling "a little wound up," like he "couldn't sleep" and was "in like a rage" and "couldn't calm down." Defendant argues that the onset of plaintiff's symptoms must be deemed to have occurred in February 1988 and, thus, his discovery of their *cause* in August 1993 was not within five years. However, we concur in Supreme Court's conclusion that plaintiff's reference to the "winter of 1988" was ambiguous as to whether these symptoms first manifested themselves in February 1988 or February 1989, as plaintiff asserts he traveled to Florida in February of both years.

Further, plaintiff clarified in a May 1998 affidavit that the primary conditions on which his claims are based—uncontrolled rage, hallucinations and psychosis—did not surface until January 1989, which is not inconsistent with his prior testimony. If credited, plaintiff's discovery of the *cause* of the injury in August of 1993 would have thus been within five years of the injury's discovery as required by the first clause of CPLR 214-c (4). In view of the foregoing, we cannot conclude as a matter of law that as of February 1988 plaintiff discovered or should have discovered the primary condition on which the claims are based (*see, Bimbo v Chromalloy Am. Corp.*, 226 AD2d 812, 815-816; *Roman v Radio Frequency Co.*, 207 AD2d 1012; *cf., Whitney v Quaker Chem. Corp., supra*, at 847; *Scheidel v A.C. & S., Inc., supra*, at 753; *Oeffler v Miles, Inc., supra*, at 825-826; *Whitney v Agway, Inc., supra*, at 784-785; *Hedlund v County of Tompkins, supra*, at 982). Accordingly, we agree with Supreme Court's determination that there are material questions of fact raised by plaintiff's testimony and affidavit (*see, Grossjahann v Wilkins & Son*, 244 AD2d 808, 809-810) as to when he discovered or should have discovered his injury, an issue which must be resolved in order to determine whether he discovered the *cause* of the injury within five years of the injury's discovery as required by CPLR 214-c (4).

Additionally, inasmuch as plaintiffs' action was not timely under CPLR 214-c (2), the second clause of CPLR 214-c (4) expressly required plaintiffs to allege and prove that there was insufficient technical, scientific or medical knowledge available

to ascertain the *cause* of plaintiff's injuries within that three-year period after the discovery of the injuries, i.e., by January 1992 (assuming plaintiffs prevail on their claim that the injury was not discovered until January 1989). The parties dispute what level of information is sufficient to ascertain the cause of plaintiff's injury for this purpose. In evaluating when and whether the existing medical or scientific knowledge and information was sufficient to enable ascertaining the cause of plaintiff's symptoms, the focus is on the available knowledge of a causal relationship or connection between the substance at issue and the symptoms alleged by the plaintiff; it does not require medical certainty or information sufficient to prevail at trial, but does entail showing that sufficient information and knowledge existed to enable the medical or scientific community to ascertain the probable causal relationship between the substance and plaintiff's injury (*see, Whitney v Agway, Inc.,* *supra,* at 785; *Hedlund v County of Tompkins, supra,* at 983; *see also, Stachowski v Consolidated Rail Corp.,* 190 AD2d 1004, 1005, *lv denied* 82 NY2d 654; *see generally, Tolston v National R. R. Passenger Corp.,* 102 F3d 863, 865-866; *Nemmers v United States,* 795 F2d 628, 632; *Fidler v Eastman Kodak Co.,* 714 F2d 192, 198-199; *Mancuso v Consolidated Edison Co.,* 905 F Supp 1251, 1260-1263).

In opposition to defendant's motion for summary judgment, plaintiffs submitted a July 1, 1993 report issued by defendant indicating that certain symptoms—including those reported by plaintiff—had been "reported rarely," but which disclaimed any necessary implication of causation. Defendant's July 1993 report makes reference to almost two dozen articles dating back to 1982 pertaining to this drug, but those prior articles are not included in the record and there was no expert testimony or documentary evidence before Supreme Court regarding their content or the purpose of defendant's 1993 report.[3] Also admitted into evidence were the Zovirax package inserts and adverse reaction reports submitted to the FDA dating back to the mid-1980's which reported instances of psychotropic effects and neurotoxicity reactions to acyclovir capsules, but which reports apparently were not publicly available. Plaintiffs argue that the July 1993 report constituted the initial availability of scientific or medical knowledge that this drug potentially caused his injuries, and thus he could not have

---

**3.** Plaintiffs contend that defendant's July 1993 report was intended to disclose information to the FDA.

discovered the cause of his injuries within three years of the discovery of his injury in January 1989.

Defendant, while continuing to deny causation, apparently maintains that the references in its July 1993 report to earlier medical articles published in the 1980's regarding reported symptoms, neurotoxicity and the oral use of Zovirax demonstrate, as a matter of law, that there was sufficient scientific or medical information available to determine the cause of plaintiff's injuries *within* the three-year limitations period. Defendant then contends, somewhat inconsistently, that its 1993 report itself did not constitute the required information of causation *after* the three-year limitation period expired (i.e., after January 1992 but before January 1995 when the five-year period expired).

In our view, Supreme Court correctly determined that the parties raised material questions of fact regarding the availability of sufficient scientific and medical knowledge and information to ascertain the cause of plaintiff's injury within the three-year period following plaintiff's alleged discovery of his injury in January 1989 (*see, Annunziato v City of New York*, 224 AD2d 31, 39, *supra*; *cf., Whitney v Agway, Inc.*, 238 AD2d 782, *supra*; *Hedlund v County of Tompkins*, 235 AD2d 980, *supra*). Further, under these circumstances, principles of judicial estoppel do not warrant precluding plaintiffs from asserting the applicability of the limitations extension of CPLR 214-c (4) and proving with evidence the insufficiency of medical and scientific information to ascertain the cause of plaintiff's injury, based upon their counsel's unsuccessful contentions at a 1996 hearing in one of the medical malpractice actions or based upon their interrogatories (*see, Shepardson v Town of Schodack*, 195 AD2d 630, 632, *affd* 83 NY2d 894). While the burden remains upon plaintiffs at trial to make the showing required by CPLR 214-c (4), material questions of fact were raised pertaining to the applicability of this extension.

CARDONA, P. J., CREW III, GRAFFEO and MUGGLIN, JJ., concur.

Ordered that the order is affirmed, with costs